## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS, )
                                     )
                    Plaintiff, )
                                     )
    -vs- )           Docket No. 0752 1:23CR00197-1
                                     ) *Honorable Sharon Johnson Coleman*
JAIME SANDOVAL, )
                                     )
                 Defendant )

## DEFENDANT JAIME SANDOVAL'S
## SENTENCING MEMORANDUM

Now comes the Defendant herein, JAIME SANDOVAL, by and through his attorney, DANIEL E. RADAKOVICH, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, and 18 U.S.C. §3553(a), as well as the Sixth Amendment to the Constitution of the United States and the United States Supreme Court's opinion in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) respectfully submits the following Defendant's Sentencing Memorandum.

## INTRODUCTION

On November 20, 2023, at a change of plea hearing before the Honorable Sharon J. Coleman, Defendant, Jaime Sandoval (herein after referred to as "Defendant Sandoval"), withdrew his plea of not guilty to Count 1 of the indictment, and entered a plea of guilty.

Pursuant to the written plea agreement, in addition to entering a plea of guilty to Count 1, Defendant Sandoval stipulated to committing the offense of possession a machine gun in violation of 18 U.S.C. § 922(o) and 2, pursuant to §1B1.3, relevant conduct.

### OBJECTIONS AND CORRECTIONS TO PRE-SENTENCE INVESTIGATION REPORT

The Defendant agrees with the sentencing calculations as well as the factual and legal conclusions in the PSIR except that the Defendant respectfully disagrees with the Sentencing Recommendations (Disclosed).

1. **THE SENTENCING GUIDELINES AS APPLIED TO DEFENDANT JAIME SANDOVAL.**

    A.     <u>Calculation of the Total Offense Level for Jaime Sandoval</u>

**Count 1: Possession of Machine Gun**

| | |
|---|---|
| **Base Offense Level:** The guideline for a violation of 18 U.S.C. § 922(o) is found in the USSG §2K2.1. The base level is 18 because the offense involved a firearm described in 26 U.S.C. § 5845(a). USSG §2K2.1(a)(5). | 18 |
| **Specific Offense Characteristics:** The offense level is increased by two levels because the offense involved between three and seven firearms. USSG 2K2.1(b)(1)(A). | +2 |
| **Victim Related Adjustment:** None | 0 |
| **Adjustment for Role in the Offense:** None. | 0 |
| **Adjustment for Obstruction of Justice:** None | 0 |
| **Adjusted Offense Level (Subtotal):** | 20 |
| **Chapter Four Enhancement:** None | 0 |
| **Acceptance of Responsibility:** The Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). | -2 |
| **Acceptance of Responsibility:** The Defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b) | -1 |
| **Total Offense Level:** | 17 |

    B.     <u>Calculation of Jaime Sandoval's Criminal History Category</u>

Defendant Sandoval agrees with the calculations in the PSIR that he has one (1) criminal history point and that he therefore has a Criminal History Category I.

    SECTION 3553(a) FACTORS AND ARGUMENT

After the ruling in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005) the advisory guideline range is now but one factor to consider in imposing an individualized reasonable sentence. Pursuant to 18 U.S.C. §3553(a), the court is required to "impose a sentence sufficient, *but not greater than necessary*," to satisfy the purposes of sentencing. (Emphasis added.) According to §3553(a)(2), the purposes of sentencing are:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

- to afford adequate deterrence to criminal conduct;

- to protect the public from further crimes of the defendant; and

- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective way.

Furthermore, aside from the purposes of sentencing and the advisory guideline range, courts are required to also consider: (1) the nature and circumstances of the offense and the characteristics and history of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and, (4) the need to provide restitution to the victims of the offense. 18 U.S.C. §3553(a). *See also, United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005) ("[T]he sentencing judge may not rest on the guidelines alone, but must, if asked by either party, consider whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors... He cannot treat all sentences that would fall within the guidelines sentencing range as reasonable per se.").

In interpreting *Booker*, the Seventh Circuit has concluded that district courts must consider the factors set forth in §3553(a) at sentencing, in conjunction with the advisory guidelines. *United*

*States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005); *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). As the *Dean* Court explained, while the guidelines are no longer mandatory, the factors enumerated in §3553(a) are. In light of these decisions, district courts may no longer consider the sentencing guidelines as the end of the inquiry. The §3553(a) factors are mandatory and there must be sufficient indication in the record that §3553 factors relevant to the inquiry were appropriately considered. *See, e.g. United States v. Vaughn*, 433 F.3d 917, 924 (7th Cir. 2006). And, the need for the district court to explain its consideration of the 3553(a) factors, when choosing to impose a guideline sentence should be outside the guidelines. *United States v. Spano*, 447 F.3d 517, 519 (7th Cir. 2006).

**2.      SPECIFIC §3553(a) FACTORS AS APPLIED TO DEFENDANT JAIME SANDOVAL**

**A.      <u>Jaime Sandoval's minimal role in the offense.</u>**

The Defendant was a minor participant in the criminal activity here. The Defendant did not print any of the conversion devises that were involved. Although Defendant Sandoval collected, transported and delivered conversion devices and firearms, the defendant played a minor role in the overarching criminal offense. Defendant Sandoval became involved in the offense through a prior friendship, during which time he was unemployed. There is no information to suggest that Defendant Sandoval was an organizer, leader, or supervisor of the activity.

The defendant cooperated fully with the Government and has truthfully provided to the Government all information and evidence that the defendant knew in this case. The defendant has taken full responsibility for his actions.

The Defendant's illegal conduct will have serious and permanent consequences not only to himself but, more importantly, to his long-term girlfriend and his estranged family, which includes his two parents and four siblings.

4

**<u>History and Characteristics of Defendant Jaime Sandoval</u>**

The Defendant was born on August 15, 2000 to Frederico Navarro and Adriana Sandoval, as is specified quite thoroughly and completely in Paragraphs 45 through and including 54 of the PSIR. Defendant Sandoval has never had contact with his father and is unaware of his age or where he currently resides. Defendant Sandoval's mother lives in Chicago, Illinois, along with his four maternal siblings, Adrian Sandovalm (age 20), David Sandoval (age 18), Anahi Sandoval (age 13) and Miguel Sandoval (age 6).

Defendant Sandoval's was raised by and lived with his mother until the age of sixteen. As described in Paragraph 49, Defendant Sandoval moved out of his mother's home at the age of sixteen due to a strained relationship with his mother following continued disagreements with his mother's boyfriend. He subsequently moved into his uncle's (name unknown) home in Chicago, Illinois. The Defendant does not have a close relationship with his mother or his siblings.

Defendant Sandoval has been in a stable and living relationship with Stephanie Munoz, age 24, for the previous seven years. At the time of his arrest, Defendant Sandoval was residing with Ms. Munoz at 10730 South Green Bay Avenue in Chicago, Illinois.

The Defendant has a limited education but has worked hard his entire life ever since his childhood. As noted in Paragraphs 65 through and including 68 of the PSIR, Defendant Sandoval attended Epic Academy in Chicago, Illinois for the 9th and 10th grade. After failing the 10th grade, Defendant Sandoval transferred to Bowen High School in Chicago, Illinois for his second attempt at 10th grade in 2016. However, due to moving out of his mother's home and into his uncle's home, Defendant Sandoval withdrew from high school in order to seek employment to financially support himself.

Upon moving out of his mother's home in 2016, Defendant Sandoval has consistently held numerous jobs in order to support himself. The PSIR indicates that Mr. Sandoval maintained regular employment (reference to Paragraphs 69 through and including 72 of the PSIR).

Defendant Sandoval's physical health is good. He does not take any medication and does not use drugs.

### C. Hardship upon Defendant and his "Surrogate" Family

As was previously written, the Defendant resides with his long-term girlfriend, Stephanie Munoz. Prior to his arrest and subsequent detainment, Defendant Sandoval worked for Ms. Munoz's family's business, Munoz Roofing, Inc. As reported in the PSIR, prior to Defendant's employment with Munoz Roofing and during period of his unemployment, Ms. Munoz financially supported Defendant Sandoval and their shared residence. Although Ms. Munoz was able to maintain adequate finances during Defendant's brief period of unemployment, her sole income would not allow her to continue to financially support herself and her residence. As noted in the PSIR and the character reference letter noted below, Defendant Sandoval's employer at Munoz Roofing has assured the Defendant he will still be able to work for the company.

Defendant Sandoval provides a crucial emotional support system for Ms. Munoz as well as her younger siblings. Defendant Sandoval routinely steps in to help take care of Ms. Munoz's younger siblings by picking them up from school, fixing things around their home, and taking them to the grocery store.

As a result of this case and his imprisonment, the Defendant and Ms. Munoz acknowledge increased stress, tension and financial pressure in their relationship.

**D.**     <u>**Supplemental Exhibits and Character Reference Letters**</u>

Attached hereto (as Exhibits A through F) are five (5) letters written in support of Defendant Sandoval by employers and close friends who have known him and who can testify to his good qualities, as well as exhibits that detail Mr. Sandoval's character for hard work and devotion to his friends and family.

Each of the five individual letters demonstrate and profess a consistent theme of deep love, affection, appreciation of, respect for and support for the Defendant Jaime Sandoval by his close friends. The letters demonstrate in great detail how Mr. Sandoval plays a significant role in the lives of his long-term girlfriend and her family members, and how crucial Mr. Sandoval's support has been for his long-term girlfriend. It is submitted that the letters speak powerfully by themselves and, for that reason, defense counsel has not "summarized" said letters.

The exhibits are as follows:

Exhibit "A": A letter from Blanca Munoz, Defendant's employer and sister of Stephanie Munoz.

Exhibit "B": A letter from Stephanie Munoz, long-term girlfriend of Mr. Sandoval.

Exhibit "C": A typed letter taken from an original hand-written letter (which is also included for reference as Exhibit "C-1") written by Camila Munoz, sister of Stephanie Munoz.

Exhibit "D": A letter from Luz Elena Munoz, sister of Stephanie Munoz.

Exhibit "E": A typed and translated letter taken from an original hand-written letter (which is also included for reference as Exhibit "E-1") written by Luz Elena Munoz, mother of Stephanie Munoz.

Exhibit "F": A Certificate of Completion of the Resilience Program Mr. Sandoval completed in Jerome Combs Detention Center in Kankakee County, Illinois, where Defendant has been held in pre-trial detention on this case.

**RECOMMENDATIONS REQUESTED**

Defendant Sandoval respectfully requests that this Honorable Court sentence him at or below the Minimum (adjusted) Guidelines Range sentence in this cause pursuant to 18 USC §3553(a) consistent with, or less than, the recommendations made by the United States Probation Office in the PSIR. Such a sentence is appropriate and just given the facts and circumstances of this case and the young age and minimal prior criminal history of Defendant Sandoval.

Respectfully submitted,

By: /s/ Daniel E. Radakovich
DANIEL E. RADAKOVICH,
Attorney for Defendant Sandoval

Daniel E. Radakovich
900 West Jackson Boulevard
Suite 5-East
Chicago, IL 60607
(312) 733-5116
dan@danielradakovich.com

8

# Exhibit A

Munoz Roofing Inc,
219-298-8338
Owner Blanca Munoz

Dear Judge,

Jaime Sandoval has been a great asset to my roofing company. He is a reliable worker. I know that he will always be on time and is willing to lend a helping hand when needed. He has proven to me that I can trust him. He has worked for my company for a year and I have promised him a job when he gets out. He did so much for my company. He helped with paperwork and he does help out on the field as well. Many of my workers don't really speak English so when I am unable to go out and help them translate I know I can count on Jaime to go out there and help them understand what is going on. I know that I can trust him and if I have him do something it's going to get done. I like how diverse he is, what I mean by that is that he can pretty much do it all. I know he sometimes doubts himself but I try to encourage him to give everything a try. He usually picks up on new things pretty fast. He is a really smart young man and he just needs someone to believe in him and encourage him to do better. He has never caused me any trouble. If you have any more questions feel free to call me at the number above.

Sincerely Blanca Munoz

# Exhibit B

Dear Judge,

    I, Stephania Munoz, have been in a relationship with Jaime Sandoval for the past 6 years, almost 7 years in May. We met when we were really young and have done a lot of growing together. I feel like we bring out the best in each other and can honestly say this time apart has been really hard on both of us. I can't wait for him to get out. We have a dog together. Her name is Nala and I can honestly say that she seems depressed since Jaime's arrest. The times I've set up video chats with Jaime she gets excited to see him. Jaime plays a huge role in my family's life. He took on the older brother role to my siblings. He tries to include them in almost everything we do together. He took a really big liking to my youngest sister Camila. I can say that she would come visit us but truely only wanted to hang out with Jaime. They are a dynamic duo and she has even said that she wants to spend the week at my house when Jaime gets out. My mom welcomed him with open arms and for that I know he is grateful. I know Jaime doesn't have the best relationship with his mom and it makes me sad for her because if she can only see what a remarkable young man he is she would be really proud. He makes sure my mom always has what she needs and is always willing to give her a helping hand. He looks to my mom like a mother figure. He shows her so much respect and love. He also has a nephew, Alonzo, and goddaughter, Jaylene, that ask for him all the time. I try to talk to him on the phone as much as I can and try to set up video visits as frequently. It has been a difficult time these past couple of months. He is my person. The one I want to tell everything to. He has been my best support system through everything in life. We had a miscarage about 2 years ago and he was by my side through it all. Going through that with him has made me love him even more. To see someone you love hurt so badly yet he put his feelings aside to make sure I was okay and made sure I had everything I needed. He just needs to come back home. I know he regrets everything he has done and I know he is ready to change and be a better person. He is my other half and I am having a hard time being away from him. I don't think I have ever been away from him this long. We moved in with each other just 3 months into dating. I guess it's true what they say when you know you know. We had a lot of people doubt our relationship but we have proven them all wrong. Can't wait for him to get home and continue to grow together and maybe start a family together.

                Sincerely, Stephania Munoz

# Exhibit C

Dear Judge,

I am Jaime's sister in-law. Jaime is like a big brother to me. With him being gone feels like a missing hole in the family. He was always making us laugh even when the mood was off, has been there when he was the most needed. He's just like one of us and is loved by our family. We always argue like older brother and younger sister but always act like nothing happened the next day. He would always pick us up from school when my mom couldn't or would take us to the store or places when my mom was busy or at work. He was also handy when it came to broken stuff like sinks or toilets. I also really wanted him to teach me to drive since my mom is always so busy. Jaime took care of our family since my dad really couldn't. I was able to ask him for anything and was able to count on him.

Camila Munoz

**Exhibit C-1**

Dear Judge,

I am Jaimes sister in-law, Jaime is like a big brother to me with him being gone feels like a missing home in the family he was always making us laugh even when the mood was off, hes been there when he was the most needed, hes just like one of us and is loved by our family, we always argue like older brother and younger sister but always act like nothing happens the next day, he would always pick us up from school when my mom couldnt or would take us to the store or places when my mom was busy or at work, he was also handy when it came to broken stuff like sinks or toilets, & I also really wanted him to teach me to drive since my mom is always so busy, Jaime took care of our family since my dad really couldnt, I was able to ask him for anything and was able to ~~to~~ to count on him.



Dear judge,

Jaime has been apart of my life for 5 years. I met him when I was 15 and he was working at my parents car wash. I became close to him when he started dating my sister Stephania. He became the older brother I didn't have. I knew I could count on him for anything and he would always be there. Any time I needed a ride somewhere or felt uncomfortable being somewhere I knew I could call him and he would come pick me up. I would always be at his house watching movies with my sister and him and third wheeling with them when we would go out. We would always joke around with each other and he's never made me feel unsafe or uncomfortable when I would spend time with him. It feels weird not having him around because he became part of the family. Whenever I was feeling sad or tired of being home he would always invite me out with him and my sister so I could get out the house and clear my mind. Even though he didn't like scary movies he would be there watching them with us because he knew me and my sister liked them. Jaime is a big party of our family and he is really missed around here.

# Exhibit E

**Translation**

Dear Judge, I just want to tell you a little about Jaime Sandoval, first of all, he is my daughter Stephanie Munoz's boyfriend. They have known each other for many years and lived together. I knew him because he worked at my husband's carwash, a very good worker despite his age, he earned everyone's respect and a year later he was promoted to manager of the business. Jaime is a very respectful, noble and kind person, he was always aware of everything including the chores of my house, He always makes himself comfortable cleaning the snow, cleaning the cars, sweeping the autumn leaves and has a very good relationship with my daughter. Very respectful and very hard-working, he earned the affection of all my children because he was always aware of everything, whether he wanted me for him to pick up the children from school, he would pick them up. I have no words to thank him for everything he has helped us and we miss him a lot, we all make mistakes and we deserve a second chance I hope and take into account the good person that Jaime Sandoval is, I am the mother of his girlfriend Stephanie Munoz and my name is Luz Elena Munoz. [Signature]



Querido Jues solo quiero ablarte un poco de Jaime Sandoval primero que nada el es el novio de mi hija Stephania Munoz ello tiene conosiendose muchos años y vivian junto yo a el lo conosi por que el trabajava en el carwash de mi esposo muy buen trabajador apesar de su edad se gano el respeto de todos y al ano lo asendieron a encargado del Negocio Jaime es una persona muy respetosa noble y amable el siempre estava al pendiente de todo incluzo aste de los quiaseres de mi casa el siempre acomodandose a limpiar la Nieve a limpiar los corros a barres las ojas de otoño y llevava una muy buena Relacion con mi hija muy respetoso y muy trabajador el se gano el cariño de todo mis hijos pues siempre estava al pendiente de todo de si yo ocupaba que Recojiera a los niños de la escuela el iva por ellos no tengo palabras para agradecerle todo lo que nos a ayudado y nos ase mucha falta, todos cometemos errores y meresemos una segunda oportunidas espero y tome en cueta lo buena persona que es Jaime Sandoval yo soy la mama de su novia Stephania Munoz y mi nombre es Luz Elena Munoz



CERTIFICATE OF COMPLETION

AWARDED TO

JAIME SANDOVAL

FOR COMPLETION OF THE RESILIENCE PROGRAM

JEROME COMBS DETENTION CENTER

OCTOBER 12, 2023–OCTOBER 27, 2023

_____
Instructor

_____
Instructor

_____
Chief of Corrections